# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ELLEN KLEINER AND YURI KLEINER, Plaintiffs, v. RITE AID CORPORATION et al., Defendants. | CIVIL ACTION NO. 17-3975 |

## MEMORANDUM

PRATTER, J.                                                                                                                    OCTOBER 16, 2017

## I. Introduction

Ellen and Yury Kleiner brought this case in state court against five corporate defendants: Johnson & Johnson; Johnson & Johnson Consumer Companies, Inc.; Imerys Talc America, Inc.; Rite Aid Corporation; and Right Aid of Pennsylvania, Inc. The Kleiners allege that, for 35 years, Mrs. Kleiner bought, from Rite Aid locations in and around Philadelphia, J&J hygiene products manufactured by J&J using talc mined by Imerys. In 2011, she was diagnosed with ovarian cancer, allegedly caused by carcinogenic compounds in these products. She brings claims based on several theories, including strict liability failure to warn, strict liability design and manufacturing defects, negligence, and violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 *et seq*. Mr. Kleiner makes a derivative claim for loss of consortium.[1]

The Johnson & Johnson Defendants removed the case to this Court. Although the Kleiners and the Rite Aid Defendants are all Pennsylvania citizens, Johnson & Johnson argued

---

[1] Cases involving similar allegations have been designated to a multidistrict litigation being managed in the District of New Jersey, MDL No. 2738, *In re Johnson & Johnson Talcum Powder Marketing, Sales Practices and Products Liability Litigation*. The J&J Defendants have moved to stay this case pending its expected transfer to the MDL. Because the Court finds that it lacks diversity jurisdiction, as discussed below, J&J's Motion to Stay is denied.

1

that the Rite Aid Defendants were fraudulently joined and that, without them as parties, complete diversity exists. The Kleiners have filed a Motion to Remand. Because the Court concludes that the Rite Aid Defendants were not fraudulently joined, the Motion to Remand is granted.

## II. Legal Standard

Defendants in a civil case in state court may remove the case to federal court as long as the federal court would have original jurisdiction over the case. *See* 28 U.S.C. § 1441(a). "The removal statutes 'are to be strictly construed against removal and all doubts should be resolved in favor of remand.'" *Boyer v. Snap-on Tools Corp.,* 913 F.2d 108, 111 (3d Cir. 1990) (quoting *Steel Valley Auth. v. Union Switch & Signal Div.,* 809 F.2d 1006, 1010 (3d Cir. 1987)) (additional citations omitted). There is no different principle to be applied in cases where MDL status may be at issue.

Under 28 U.S.C. § 1332, a federal court has diversity jurisdiction only if all plaintiffs are diverse from all defendants. The doctrine of fraudulent joinder, an exception to this complete diversity requirement, allows a defendant to remove an action if a non-diverse defendant was fraudulently joined solely to defeat diversity jurisdiction. *Brown v. Jevic,* 575 F.3d 322, 326 (3d Cir. 2009). If the non-diverse defendant was fraudulently joined, the court may disregard the citizenship of the non-diverse defendant for the purpose of determining diversity of citizenship. *In re Briscoe,* 448 F.3d 201, 216 (3d Cir.2006)). If the court determines that joinder was not fraudulent, it must remand. *Id.* at 216.

Joinder is fraudulent "where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment." *Boyer,* 913 F.2d at 111 (quotations omitted). "The presence of a party fraudulently joined cannot defeat removal." *In re Diet Drugs,* 220 F. Supp. 2d 414, 419 (E.D. Pa. 2002).

2

The Third Circuit Court of Appeals set forth the standards applicable to fraudulent joinder analysis as follows:

> When a non-diverse party has been joined as a defendant, then in the absence of a substantial federal question the removing defendant may avoid remand only by demonstrating that the non-diverse party was fraudulently joined. But the removing party carries a heavy burden of persuasion in making this showing. It is logical that it should have this burden, for removal statutes are to be strictly construed in favor of remand.
>
> Joinder is fraudulent where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendants or seek a joint judgment. But, if there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court.

*Batoff v. State Farm Insurance Co.*, 977 F.2d 848, 851–52 (3d Cir. 1992) (citations and punctuation omitted); *see also Briscoe*, 448 F.3d at 217.

### III. Discussion

The J&J Defendants oppose the Kleiners' Motion to Remand for four reasons: (1) the Rite Aid Defendants merely sold, rather than manufactured or designed, the products; (2) the Kleiners have not alleged how the products caused Mrs. Kleiner's cancer; (3) the Kleiners' allegation that J&J hid information about the products' harmfulness contradicts their allegation that Rite Aid was aware of the danger; and (4) Rite Aid Corporation, the parent Rite Aid Defendant, did not own any of the stores where Mrs. Kleiner purchased the products.

These arguments are addressed in turn. To prove that complete diversity does not exist, the Kleiners need only show that one claim against one non-diverse defendant is legally possible.[2] *See Batoff*, 977 F.2d at 851 (quoting *Boyer*, 913 F.2d at 111) ("[I]f there is even a possibility that a state court would find that the complaint states a cause of action against any one

---

[2] J&J makes the opposite argument: According to J&J, if even a single count in the Complaint is "invalid on its face," *see* Memorandum of Johnson & Johnson in Opposition to Plaintiffs' Motion to Remand, Doc. No. 13, at 16, as to the claim against the non-diverse defendant, then, according to J&J, that is sufficient for the Court to conclude the plaintiff lacked the requisite good faith in naming that defendant to the case at all. J&J cites no authority for such a strident rule. The Court finds no support to make such a ruling on this record.

3

of the resident defendants, the federal court must find that joinder was proper . . . ."). In this case, Count VI — Strict Liability Design Defect and Manufacturing Defect — against Rite Aid of Pennsylvania fits the bill.

### A. Sellers are liable for manufacturing and design defects in Pennsylvania.

J&J first argues that Rite Aid cannot be strictly liable for a design or manufacturing defect because Rite Aid did not design or manufacture the product. But "Pennsylvania remains a Second Restatement jurisdiction." *Tincher v. Omega Flex, Inc.*, 104 A.3d 328, 399 (Pa. 2014). That means that "[o]ne who sells any product in a defective condition . . . is subject to liability for physical harm thereby caused to the ultimate user or consumer." *Webb v. Zern*, 220 A.2d 853, 854 (Pa. 1966) (quoting Restatement (Second) of Torts § 402A(1) (1965)). As the Pennsylvania Supreme Court recently reiterated, "[t]o demonstrate a breach of duty in a strict liability matter, a plaintiff must prove that a seller . . . placed on the market a product in a 'defective condition.'" *Tincher*, 104 A.3d at 384. "Pennsylvania's strict liability law extends protection to its citizens from unsafe products, holding a seller as well as a manufacturer accountable for placing an unsafe product in the marketplace." *Williams v. Terex-Telelect, Inc.*, No. 01-CV-3770, 2003 WL 22431920, at *2 (E.D. Pa. May 19, 2003). Therefore, Rite Aid may be strictly liable to the Kleiners because of the products' manufacturing or design defect.

### B. It is legally possible to conclude, based on the Kleiners' allegations, that the products sold by Rite Aid caused Mrs. Kleiner's cancer.

J&J next argues that the Kleiners have not alleged facts showing that the products caused Mrs. Kleiner's cancer. In a products liability action, the "plaintiff must establish that the injuries sustained were caused by the product of a particular manufacturer or supplier." *Payton v. Pennsylvania Sling Co.*, 710 A.2d 1221, 1225-1226 (Pa. Super. 1998); *see also In re Asbestos Prod. Liab. Litig. (No. VI)*, 801 F. Supp. 2d 342, 345 (E.D. Pa. 2011) ("Under Pennsylvania law,

4

a plaintiff must establish, as a threshold matter, 'that [his or her] injuries were caused by a product of the particular manufacturer or supplier.'") (quoting *Eckenrod v. GAF Corp.*, 544 A.2d 50, 52 (Pa. Super. 1988)).

In this case, the Kleiners have alleged that Mrs. Kleiner purchased the product regularly from eight Rite Aid stores over a period of 35 years — from age 15 to her cancer diagnosis in 2011. J&J argues that, because the Kleiners have not specified how "regularly" she bought the product, it is not legally possible for her claim to succeed. J&J's argument is better directed at a later stage in the litigation, when the Kleiners face a heavier burden of persuasion. For now, as to the issue immediately at hand, the Kleiners need only show that their claim is "possible." *See Batoff*, 977 F.2d at 852 ("[T]he inquiry into the validity of a complaint triggered by a motion to dismiss under Rule 12(b)(6) is more searching than that permissible when a party makes a claim of fraudulent joinder. Therefore, it is possible that a party is not fraudulently joined, but that the claim against that party ultimately is dismissed for failure to state a claim upon which relief may be granted."). At this stage, the Court cannot conclude that it is legally impossible for Mrs. Kleiner to prove that the products she bought from Rite Aid caused her ovarian cancer.

This conclusion is especially true given that Pennsylvania applies a "substantial factor" test for causation, rather than a more demanding "but-for" test. *See Spino v. John S. Tilley Ladder Co.*, 696 A.2d 1169, 1172 (Pa. 1997) ("Pennsylvania law requires that a plaintiff prove two elements in a product liability action: that the product was defective, and that the defect was a substantial factor in causing the injury.") (citing *Berkebile v. Brantly*, 337 A.2d 893 (Pa. 1975)); *cf.* Note, *Rethinking Actual Causation in Tort Law*, 130 Harv. L. Rev. 2163, 2166 (2017) (criticizing but-for causation for "den[ying] causal status to actions that appear intuitively causal").

What is more, for present purposes, J&J's argument proves too much. If the Kleiners cannot prove causation as to Rite Aid, then they cannot prove causation as to any defendant. The Court is not willing, at this preliminary stage, to draw such a sweeping conclusion.

To be sure, the Kleiners may eventually face an uphill battle as to causation. *Cf. In re Asbestos*, 801 F. Supp. 2d at 346 (concluding, at the summary judgment stage, that "a jury would not be able to make the causal inference" between defendant's breach of duty and plaintiff's injury). But now is not the time to fight that battle. At this early stage, all that the Court need conclude is that the Kleiners' allegation of causation is legally possible.

### C. *Rite Aid's lack of awareness about the risk of cancer has no bearing on its strict liability for the manufacturing defect.*

Next, J&J argues that the Kleiners face a Catch-22. On the one hand, they allege that J&J concealed the risks of cancer from the world — including from Rite Aid. On the other hand, they allege that Rite Aid knew or should have known of the danger posed by the products. *Cf. In re Rezulin Prod. Liab. Litig.*, 133 F. Supp. 2d 272, 290 (S.D.N.Y. 2001) ("[T]he theory underlying the complaints is that the manufacturer defendants hid the dangers of [the drug] from plaintiffs, the public, physicians, distributors, and pharmacists — indeed, from everyone. Plaintiffs' allegations that pharmacists knew and failed to warn of the dangers therefore are purely tendentious.").

This argument may have merit — but only as to the Kleiners' claims that depend upon Rite Aid's knowledge. In a strict products liability action, however, the defendant's knowledge is irrelevant. *See Spino*, 696 A.2d at 1172. Thus, J&J's argument that Rite Aid was unaware of the products' dangers does not speak to the question whether Rite Aid was fraudulently joined.

*D. Rite Aid Corporation's non-ownership of the stores in question still does not secure complete diversity between the parties.*

One of the Rite Aid Defendants, Rite Aid Corporation, apparently does not own or operate any individual Rite Aid Stores. For this reason, J&J argues that Rite Aid Corporation cannot be liable for the Kleiners' injuries. But this argument ignores the other Rite Aid Defendant, Rite Aid of Pennsylvania. Even if the "parent" Rite Aid company was fraudulently joined, Rite Aid of Pennsylvania was not, and that alone is enough to defeat complete diversity, in the absence of which this Court has no jurisdiction.

**IV. Conclusion**

For the foregoing reasons, the Kleiners' Motion to Remand is granted and the Motion to Stay is dismissed as moot. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
United States District Judge